Robert TENNISON; Barbara Tennison, on behalf of themselves and as next friends for their minor child Tyrel Tennison; Curtis Deatherage; Teresa Deatherage, on behalf of themselves and as next friends for their minor child Velvet; Frederick Sloane; Linda Sloane, on behalf of themselves and as next friends for their minor children Elizabeth Sloane and Sabrina Sloane; Sue Downey, on behalf of herself and as next friend for her minor children Joshua Downey and Shannon Downey, Plaintiffs–Appellants,

v.

Norma PAULUS; Superintendent of Public Instruction for the State of Oregon; Oregon State Board of Education, Susan Massey, Tom McClinton, Jeana Woolley, Judith Stiegler, Anita Decker, Felipe Veloz, in their official capacities as members of the State Board of Education; South Lane School District 45J3; Bob Sisk, in his official capacity as Superintendent and Budget Director of South Lane School District; Krista D. Parent, in her official capacity as Assistant Superintendent and Curriculum Director of South Lane School District; Sherry Higgins, Rick Settelmeyer, Leslie Rubinstein, Mary Koepfle, Carol Quackenbush, John Petrick, in their official capacities as members of the South Lane School Board; Beaverton School District No. 48; Yvonne Katz, in her official capacity as Superintendent of Beaverton School District; Judy Tacconga, in her official capacity as Executive Administrator for Restructuring Sup-

port Services for the Beaverton School District; Chuck Meyers, Sherre Calouri, John Wilkins, David Geiger, robert Shook, in their official capacities as members of the Beaverton School Board, Defendants–Appellees.

No. 97–35466.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1998.

Decided June 9, 1998.

Stephen M. Crampton, American Family Association Law Center, Tupelo, Mississippi, for plaintiffs-appellants.

David Schuman, Deputy Attorney General, Salem, Oregon; Joel DeVore, Luvaas, Cobb, Richards & Fraser, P.C., Eugene, Oregon; and James N. Westwood, Miller Nash, Wiener, Hager & Carlsen, LLP, Portland, Oregon, for defendants-appellees.

Before: SKOPIL, HAWKINS, and THOMAS, Circuit Judges.

SKOPIL, Senior Circuit Judge:

Plaintiffs, Oregon public school students and their parents, challenge the constitutionality of the Oregon Educational Act for the 21st Century, Or.Rev.Stat. §§ 329.005–329.975, alleging that the Act violates the First and Fourteenth Amendments. The district court granted summary judgment to the state defendants. We affirm that decision on the First Amendment claim; we vacate the disposition of the Fourteenth Amendment claim because the district court lacked subject matter jurisdiction.

## I.

The Oregon Legislature passed the Oregon Educational Act for the 21st Century in 1991 and amended it in 1995. *See* 1995 Or. Laws 660. The Act restructures the public school system in Oregon by imposing a "rigorous academic program," Or.Rev.Stat. § 329.015(2)(a); implementing periodic assessments of students' progress in the form of "Certificates of Mastery," *see id.* §§ 329.035(4)(b), 329.445–.489; developing "alternative learning environments," *see id.* §§ 329.035(4)(c), 329.485(4)-(5), 329.860; establishing "early childhood programs," *see id.* §§ 329.035(4)(d), 329.160–.245; and emphasizing "work-related learning experiences," *see id.* §§ 329.035(4)(e), 329.447(4), 329.475, 329.855. Part of the Act's philosophy is that students should be expected to succeed. *See, e.g., id.* § 329.025(2) (specifying that school system should "[a]ssume[ ] that all students can learn."); *id.* § 329.035(1) ("The State of Oregon believes that all students can learn and should be held to rigorous academic content standards and expected to succeed.").

Plaintiffs contend that the Act impermissibly encroaches upon students' "freedom of the mind" and imposes viewpoint discrimination, both in violation of the First Amendment. They also argue that the Act infringes upon their rights as parents to rear their children free of governmental interference, a right of substantive due process guaranteed by the Fourteenth Amendment. *See Nunez v. City of San Diego,* 114 F.3d 935, 951–52 (9th Cir.1997). Although plaintiffs purport to challenge the Act on its face and as applied, they fail to provide a single example of how the Act has been applied to violate any constitutional rights of any specific individual. Their "evidence" of unconstitutional application consists of hypothetical explanations of how the Act might be implemented or interpreted. No concrete constitutional violation is alleged. This prompts us to determine, as a threshold matter, whether

plaintiffs had standing to sue and thus whether the district court had jurisdiction. *See Steel Co. v. Citizens for a Better Env't,* —— U.S. ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210, 226–227 (1998).

## II.

■■■ To satisfy the Article III case or controversy requirement, plaintiffs must demonstrate their standing to sue, which includes a showing of actual injury to their legally protected rights. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *San Diego County Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir.1996). A plaintiff whose constitutional rights have not been violated may nevertheless bring a facial challenge to a law that implicates the First Amendment. *See Nunez,* 114 F.3d at 949; *Ripplinger v. Collins,* 868 F.2d 1043, 1047 (9th Cir.1989). This exception applies when a law has "a close enough nexus to expression" to threaten or chill free speech. *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The Oregon Educational Act is such a law; thus, we have—as did the district court—jurisdiction to entertain plaintiffs' facial First Amendment challenge. *See Nunez,* 114 F.3d at 950–51 (allowing a facial challenge to a curfew ordinance because it had "an integral effect on the ability of minors to express themselves").

■■■ Plaintiffs' Fourteenth Amendment claim that their parental rights have been infringed by the Act is another matter, however. The overbreadth exception to traditional standing requirements operates only in the First Amendment context. *See id.* at 949 n. 11; *Roulette v. City of Seattle,* 97 F.3d 300, 306 (9th Cir.1996). Because plaintiffs allege no constitutional violation from any specific application of the Act, we conclude that they do not have standing to pursue this claim and the district court had no jurisdiction to consider its merits. Accordingly, we vacate that portion of the trial court's decision pertaining to plaintiffs' Fourteenth Amendment claim.

## III.

■■■ Plaintiffs premise their First Amendment challenge on the view that the Oregon Educational Act operates as a state mechanism for controlling the minds and speech of public school students. They raise three distinct arguments in support of their position; none persuades us that the Act violates the Constitution.

### A.

Citing *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), plaintiffs argue that, even if the statute is facially constitutional in the abstract, the court should consider school officials' implementation of the Act to determine whether that implementation has broadened its reach, rendering it facially unconstitutional. This argument is without merit. The Supreme Court in *Forsyth County* applied the principle that a narrowing construction of an impermissibly overbroad statute can save it from unconstitutionality. *See* 505 U.S. at 131, 112 S.Ct. 2395; *see also Ward v. Rock Against Racism,* 491 U.S. 781, 795–96, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The Court evaluated the bare language of the challenged statute, *see* 505 U.S. at 131, 112 S.Ct. 2395, then considered whether it had been narrowly construed by "the county's established practice," *id.* at 133, 112 S.Ct. 2395. The Court concluded not that established practice had *broadened* the reach of the law, but rather that practice had done nothing to narrow it. *See id.*

■■■ Plaintiffs' contrary reading of *Forsyth County* ignores a well established judicial mandate—we must interpret statutes to avoid constitutional conflicts when we can. *See Tucker v. California Dep't of Educ.,* 97 F.3d 1204, 1217 (9th Cir.1996) ("[W]e attempt to interpret state enactments to avoid constitutional problems...."). An as-applied challenge, not a facial challenge, is the proper vehicle to address any unconstitutional implementation of the Act. *See Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998) (distinguishing between facial and as-applied challenges).

### B.

Plaintiffs next contend that the Act violates the "freedom of the mind" protected by the First Amendment. Specifically, citing *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87

L.Ed. 1628 (1943), they point to the "coercive nature" of the new system, claiming that the Act requires educators to force children to "change their attitudes, beliefs and opinions to conform to state-approved viewpoints." They compare the mandatory flag salute in *Barnette*, which the Supreme Court characterized as "a compulsion of students to declare a belief," 319 U.S. at 631, 63 S.Ct. 1178, to the mandatory attainment of "outcomes," which plaintiffs claim is now required in Oregon public schools. The students in *Barnette* who refused to comply, however, faced explusion, and their parents were subject to criminal prosecution. *Id.* at 629, 63 S.Ct. 1178. Oregon public school students and parents are vulnerable to no such sanctions. Nothing in the Act suggests that the new educational system is based on compulsion rather than the sort of teaching "by persuasion and example" specifically distinguished and approved in *Barnette*. *Id.* at 640, 63 S.Ct. 1178; *see also Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) ("[E]ducators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns."); *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 683, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) ("The determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board."). The Constitution does not prohibit a state from imposing an educational structure and philosophy on its public schools. The Oregon Educational Act does nothing more.

### C.

Finally, plaintiffs argue that the Act imposes viewpoint discrimination, in violation of the First Amendment, because it somehow "confines students to the expression of those sentiments that are officially approved." They quote extensively from Supreme Court precedent establishing that, outside the public school setting, laws may not discriminate against speech based on its content. Even if the Act imposed such discrimination, which is far from obvious, educators nevertheless have discretion in many situations to decide what speech is permitted of students. As the Supreme Court has instructed, "[i]t does not follow ... that simply because the use of an offensive form of expression may not be prohibited to adults making what the speaker considers a political point, the same latitude must be permitted to children in a public school. ... [T]he constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. v. Fraser*, 478 U.S. at 682, 106 S.Ct. 3159.

### IV.

We conclude that the district court correctly rejected plaintiffs' First Amendment facial challenge. If Oregon public school officials apply the Act in such a way that it violates students' rights, it is for *those* students to seek redress based on *that* application. Plaintiff's Fourteenth Amendment claim is vacated for lack of jurisdiction.

AFFIRMED IN PART; VACATED IN PART; costs awarded to appellees.